# EXHIBIT C

| | |
|---|---|
| **From:** | Shawn Bailey |
| **To:** | Jack Nelson |
| **Cc:** | "Shaun Peck"; Alan Bradshaw; Tonya Wright; Karrianne Harris |
| **Subject:** | RE: Carranza v. MTC |
| **Date:** | Friday, January 27, 2017 2:36:38 PM |

Hi Jack,

We appreciate your clarification that you are considering removal to federal court. That helps us understand the scope of your inquiry. First, you asked about the legal basis for our allegations related to citizenship. The following provides a brief overview of the legal principles that have guided us.

**General Principles**
Lack of subject matter jurisdiction may be raised at any time during pendency of the case by any party or by the court. *See* FRCP 12(h)(3).

The parties can never consent to federal subject matter jurisdiction, and lack of such jurisdiction is a defense which cannot be waived. *See City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941).

There is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court. *See, e.g. Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *Strain v. Harrelson Rubber Co.*, 742 F.2d 888, 889 (5th Cir. 1984).

When considering motions to remand to state court, federal courts strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court. *See, e.g., American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 10 (1951); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993); *Tidwell v. Impaq International, LLC*, 2016 WL 7474518 at *1 (D. Md. 2016).

"In making a jurisdictional assessment, a federal court is not limited to the pleadings; it may look to any record evidence, and may receive affidavits, deposition testimony or live testimony concerning the facts underlying the citizenship of the parties." *Coury*, 85 F.3d at 249.

**Citizenship and Domicile**
Citizenship and domicile are synonymous terms for purposes of diversity jurisdiction. *See, e.g., McCann v. Newman Irrevocable Trust*, 458 F.3d 281, 286 (3d Cir. 2006).

Federal common law, not state law, governs the determination of domicile for purposes of determining whether there is diversity of citizenship. *See, e.g., Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996); *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974); *Stifel v. Hopkins*, 477 F.2d 1116, 1120 (6th Cir.1973); *Brown v. Mutual of New York Life Ins. Co.*, 213 F.Supp.2d 667, 671 n.3 (S.D. Miss. 2002).

In assessing whether a given domicile creates federal diversity jurisdiction, the relevant time is the point at which the Plaintiff filed the Complaint. *Freeport-McMoRan, Inc. v. K.N. Energy, Inc.*, 498 U.S. 426, 428 (1991).

"[T]o be a citizen of a state within the meaning of the diversity provision, a natural person must be both (1) a citizen of the United States, and (2) a domiciliary of that state." *Coury*, 85 F.3d at 248.

The definition of domicile has been well established for over a century: "residence at a particular place accompanied with positive or presumptive proof of an intention to remain there for an unlimited time." *Mitchell v. United States*, 88 U.S. 350, 352 (1874). A person's domicile persists until a new one is acquired or it is clearly abandoned; therefore, a change in domicile generally requires the concurrence of physical presence at the new location and an intention to remain there indefinitely. *Coury*, 85 F.3d at 250. Thus, in short, "it takes physical presence in a state, with intent to remain there, to establish domicile." *Denlinger v. Brennan*, 87 F.3d 214, 216 (7th Cir.1996).

**Determining the Domicile of a Minor**
"[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent." 28 U.S.C. § 1332(c)(2). Therefore, the relevant inquiry is whether Isela was a citizen of Utah.

When determining a minor's citizenship or domicile, federal courts have considered a variety of factors related to the care and responsibility exercised by and for the minor. For example, consider the following cases:

- *Juvelis v. Snider*, 68 F.3d 648, 655–56 (3d Cir.1995) (considering "a mosaic of circumstances," including "the opinions of parents or guardians who are acting in good faith and in the best interest of the individual, as well as objective factors demonstrating the quality of the individual's attachment to his proposed domicile. The individual's motive in seeking to establish a new domicile, the duration of his relationship to the locale, abandonment of a prior residence, and the location of assets and friends have all been recognized as demonstrating attachment to the proposed domicile.")

- *Mulholland v. AAA Food Service, Inc*., No. 89–3492, 1990 WL 223012, at *3 (7th Cir. 1990) (considering "whether the parents continued in their parental roles to support and control the minor child");

- *Dunlap by Wells v. Buchanan*, 741 F.2d 165, 169 (8th Cir.1984) (considering the location of those who provided for support, education, and other responsibilities for the child).

**Facts Relevant to Jurisdiction/Responses to Your Questions**
1. As you know, Isela was a United States Citizen;

2. As you know, Isela moved to Clearfield, Utah on November 5, 2013;

3. As you know, Isela resided in Clearfield, Utah full time from November 5, 2013 until her death on March 9, 2014;

4. As you know, when Isela moved to Clearfield, Utah, she intended to remain in Utah for an indefinite period of time (e.g., she enrolled in a vocational training program that takes a period of

years, she enrolled in a vocational training program that is intended to lead to employment in the community surrounding Clearfield, Utah; Isela's indefinite residence in Utah was preferred for purposes of proximity to her diabetes specialist in Salt Lake City, etc.);

5. As you know, before moving to Clearfield, Utah, Isela resided in Idaho Falls, Idaho with her mother Adriana;

6. As you know, Adriana continued to reside in Idaho Falls after Isela moved to Clearfield, Utah;

7. As you know, once Isela moved to Clearfield, Utah, Isela's mother Adriana entrusted MTC to care for and oversee Isela, ensure she received proper medical care, ensure she stayed on the Job Corps campus, ensure Isela's health and safety, feed her, house her, educate her, and so forth (of course, it is also true that Adriana continued to exercise a certain amount of care and oversight from a distance by inter alia, refusing to consent to having Isela freely leave the Job Corps campus, insisting that MTC exercise constant oversight and supervision over Isela, and so forth);

8. As you know, MTC accepted this responsibility and acted *in loco parentis* with respect to Isela; thus, once Isela moved to Clearfield, Utah, MTC provided Isela's food, housing, education, medical care, counseling, and so forth and MTC assumed full responsibility for Isela's care and oversight even though MTC carried out that responsibility very poorly;

9. I don't believe there are any additional facts not previously known to you related to Isela's heirs that would change the diversity/removal analysis. In particular: (1) Isela died intestate, (2) Isela had no spouse or children, (3) thus, Isela's only possible heirs were her biological parents, (4) Isela's biological father essentially abandoned his wife and children when Isela was approximately 4 years old and after that time she had virtually no contact with him nor did she receive any meaningful support from him; and (5) Isela did not have any other heirs like an adoptive father (e.g., Adriana had a relationship Miguel Delaluz before Isela moved to Clearfield, Utah on November 5, 2013, Miguel did not adopt Isela, Adriana and Miguel did not get married until January 26, 2015, well after Isela's death.)

I use the phrase "as you know" as shorthand to mean: (1) the facts alleged in our pleadings, (2) the facts known to MTC through its extensive dealings and communications with both Isela and Adriana, (3) the records regarding Isela in MTC's possession and control, and (4) and other information previously known to MTC.

**Conclusion**
Thanks for your attention to this matter. Feel free to call or email if you would like to discuss this matter further.

Best,

**Shawn P. Bailey, Partner**
PECK HADFIELD BAXTER & MOORE, LLC
399 N. Main Street, 3rd Floor
Logan, Utah 84321

Main: 435.787.9700

Fax: 435.787.2455

www.peckhadfield.com

**CONFIDENTIALITY NOTE**: Not the intended recipient of this email? Please reply and let me know. Then please delete the original. This e-mail may be confidential and protected by the attorney-client privilege. Thank you!

---

**From:** Jack T. Nelson [mailto:jnelson@mc2b.com]
**Sent:** Wednesday, January 25, 2017 5:26 PM
**To:** Shawn Bailey
**Cc:** Shaun Peck; Alan Bradshaw
**Subject:** Re: Carranza v. MTC

Shawn,

The purpose of our request is to find out whether the complaint is accurate and complete with respect to its revised allegations of citizenship.  The complaint contains no allegation as to the citizenship of Plaintiff other than the paragraph 11 statement which may not be accurate if Plaintiff is a citizen of a state other than Utah.  Consequently we need to know where Plaintiff has her citizenship and where other heirs, if any, have their citizenship.  If the factual basis for the paragraph 11 allegation is Isela was <u>residing</u> in Utah but her guardian(s) were citizens of other states at the time of her death, it appears that paragraph 11 is not factually or legally correct.  As a minor, Isela appears to have citizenship wherever her guardian is a citizen even if Isela was living in Utah.  If you have law which says otherwise please provide it.  We also don't yet know if there are other heirs who's place of citizenship may or may not be relevant.  In short, we need to have additional facts in order to determine if this is a removable case.  If you can't or won't provide this information we will have little choice but to assume Plaintiff (and Isela at the time of her death) were citizens of a State other than Utah.  We just need to understand the true and relevant facts.


Thanks,

Jack

On Jan 25, 2017, at 4:35 PM, Shawn Bailey <sbailey@peckhadfield.com> wrote:

> Hi Jack,
>
> We would be willing to consider your request if you could first explain to us the purpose for needing this information at this stage.
>
> Best,
>
> **Shawn P. Bailey, Partner**
> PECK HADFIELD BAXTER & MOORE, LLC
> 399 N. Main Street, 3rd Floor
> Logan, Utah 84321

Main: 435.787.9700

Fax: 435.787.2455

www.peckhadfield.com

**CONFIDENTIALITY NOTE**: Not the intended recipient of this email? Please reply and let me know. Then please delete the original. This e-mail may be confidential and protected by the attorney-client privilege. Thank you!

---

**From:** Jack Nelson [mailto:jnelson@mc2b.com]
**Sent:** Wednesday, January 25, 2017 2:14 PM
**To:** Shawn Bailey; Shaun Peck
**Cc:** Alan Bradshaw
**Subject:** Carranza v. MTC

Shawn and Shaun,

I'm writing in follow up to my last request. I appreciate your willingness to give us a few more days on the Answer, but there are a few issues that have arisen and we need some more time to adequately respond to the Second Amended Complaint. In order to respond we need to have a response to some questions raised by the allegations. Would you agree to respond to this email within two days and to give us two days to respond to the complaint after we have your answers?

Our specific questions relate to the allegations of citizenship. With respect to paragraph 8, what is the basis for the claim that "Isela was a citizen of Utah"? Is the Plaintiff a citizen of Idaho and has she always been such a citizen at all relevant times including since this lawsuit was initiated? Do you have any factual or legal authority for the principle that Isela is considered a citizen of a State different from the state where her custodian has her citizenship? Additionally, are there any other heirs aside from Plaintiff? If so, what state were they citizens of from the time the original Complaint was filed to present?

Before we respond to the Second Amended Complaint we will need to have your responses to these fundamental questions. Will you agree to provide a response in the next two days and to give us two days after receiving your answers to respond?

Thank you,
Jack Nelson


Jack T. Nelson
Manning Curtis Bradshaw & Bednar PLLC
136 East South Temple, Suite 1300
Salt Lake City, Utah 84111
(801) 363 5678
jnelson@mc2b.com

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

The information contained in this transmission may contain privileged and confidential information. It is intended only for the use of the person(s) named above. If you are not the intended recipient, you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.