Shawn P. Bailey (#9905)
Shaun L Peck (#7595)
John D. Luthy (#8880)
PECK HADFIELD BAXTER & MOORE, LLC
399 N. Main Street, Suite 300
Logan, Utah 84321
Telephone: (435) 787-9700
Facsimile: (435) 787-2455
Email: sbailey@peckhadfield.com
Email: speck@peckhadfield.com
Email: jluthy@peckhadfield.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

| | |
|---|---|
| ADRIANA DELALUZ as next friend, heir, and/or personal representative of the estate of her deceased minor child, ISELA HUERTA CARRANZA, <br><br> Plaintiff, <br><br> v. <br><br> MANAGEMENT & TRAINING CORPORATION AND JOHN DOES 1-10 (agents, employees, and/or contractors of Management & Training Corporation whose identities are currently unknown) <br><br> Defendants. | **OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Case No. 1:17-cv-00016-CW <br> Judge Clark Waddoups |

Plaintiff Adriana Delaluz, through counsel, submits this Memorandum Opposing Defendant's Motion for Judgment on the Pleadings *(Doc. 6)*.

## <u>INTRODUCTION</u>

The Federal Employees' Compensation Act ("FECA") established a federal workers compensation system. FECA has certain provisions that protect the United States and its

instrumentalities. Management and Training Corporation ("MTC") asks the Court to rule that these provisions should also protect private, for-profit government contractors. The court should decline MTC's invitation to dramatically expand FECA in this fashion.

The provisions in question are 5 U.S.C. §§ 8116(c), 8128(b), and 8132. Taken together, they provide that: (1) a federal employee's FECA determination is her exclusive remedy against "the United States or an instrumentality thereof," (2) a federal employee may also sue a third party (e.g., a party that is not "the United States or an instrumentality thereof") for the same injury, and (3) grants or denials of FECA benefits cannot be judicially reviewed outside the FECA claims process.

MTC focuses exclusively on § 8128(b), the provision prohibiting judicial review of FECA benefits awards/denials. MTC insists that § 8128(b) somehow immunizes it from liability for its torts given the denial of plaintiff's FECA claim. MTC's argument fails because:

- Section 8128(b) only prohibits relitigation of awards and denials of FECA benefits, but does not prohibit related claims against private, third-party tortfeasors like MTC;

- The United States—not MTC—was the decedent's employer for FECA purposes; therefore, the FECA determination that decedent's death was not related to her "employment" says nothing about MTC's liability;

- FECA expressly provides for litigation of claims against private, third-party contractors like MTC who are liable for injuries that were also the subject of a FECA determination;

- MTC is not an agency or instrumentality of the United States, and therefore, by their express terms, the FECA statutes in question do not protect private, third-party contractors like MTC, who contribute nothing to the FECA system;

- The FECA determination has no collateral estoppel effect because: (1) plaintiff had no incentive to fully litigate the FECA claim, (2) the FECA determination is not the product of an adversarial, judicial process; and (3) the issues in the FECA determination and the issues in this case are not identical.

## FACTS

**A. MTC Is Not an Instrumentality of the United States**

1.      Management and Training Corporation ("MTC") is a private, for-profit company. (*Doc. 2-3*, Second Amended Complaint at ¶¶1-2.)

2.      MTC is a party to contracts with various agencies of the United States. (*Id.*)

3.      MTC operates the Clearfield Job Corps Center and other Job Corps Centers pursuant to contracts with the United States Department of Labor. (*Id.*)

4.      MTC is not an agency of the United States. (*Id.*)

5.      MTC is not an instrumentality of the United States. (*Id.* at ¶3.)

6.      MTC in not owned by the United States. (*Id.* at ¶¶1-2.)

7.      MTC has never claimed that it receives notices from the Federal Employees Compensation Fund pursuant to 5 U.S.C. §8147.

8.      MTC has not claimed that government officers handle or control its operations.

9.      MTC has not claimed that its officers are appointed by the government.

10.     MTC has not claimed that it does not use the facilities of the Clearfield Job Corps Center in connection with its own commercial activities.

11.     MTC has not claimed that the government exercises such control over MTC that MTC could properly be called a servant of the United States for agency law purposes.

12.     MTC has not claimed that it is supported by government aid.

13.     MTC has not claimed that its profits are distributed to and/or that its losses are borne by the government.

14.     MTC has not claimed that it performs or has performed an important government function.

**B. MTC Was Not Isela's Employer**

15.     MTC was not Isela Carranza's employer. (*Id.* at ¶9.)

16.     MTC has not demonstrated that it formed an employment relationship with Isela by actually hiring her.

17.     MTC has failed to identify Isela's job title, job duties, or job description as an MTC employee.

18.     MTC has failed to demonstrate that Isela performed labor for MTC's benefit in exchange for remuneration that was paid by MTC itself.

19.     MTC claims on its website that it employs "over 8,000 people." However, MTC has failed to demonstrate that it treats Job Corps students like Isela the same way it treats its 8,000 actual employees.

**C. MTC Caused Isela's Wrongful Death**

20.     Plaintiff's daughter, Isela Carranza, entered the Clearfield Job Corps Center on her seventeenth birthday, November 5, 2013. (*Id.* at  ¶16.)

21.     Isela died approximately four months later, on March 9, 2014, while in the custody and care of MTC. (*Id.* at ¶¶7, 17.)

22.     Isela suffered from diabetes. (*Id.* at ¶20.)

23.     MTC was aware of Isela's diabetes and her need for special monitoring and care related to her diabetes. (*Id.* at ¶¶21-23.)

24.     MTC also employed counselors and healthcare providers in a "Wellness Center" on the Clearfield Job Corps campus who were personally aware of Isela's diabetes and need for related treatment. (*Id.* at ¶24.)

25.     MTC employees repeatedly pressured Mrs. Delaluz to sign a form authorizing MTC to allow Isela to leave the Clearfield Job Corps Center unsupervised. (*Id.* at ¶32.)

26.     Mrs. Delaluz refused to sign that form due to her concerns regarding Isela's diabetes and young age. (*Id.* at ¶33.)

27.     Mrs. Delaluz also informed MTC staff that it should not, under any circumstances, permit Isela to leave the Job Corps facility unsupervised. (*Id.* at ¶34.)

28.     Following the foregoing discussions with Mrs. Delaluz, MTC employees assured Mrs. Delaluz that they would give Isela proper care. (*Id.* at ¶35.)

29.     However, on the weekend of March 1, 2014, MTC negligently allowed Isela to leave the Clearfield Job Corps campus unsupervised. (*Id.* at ¶¶41-42.)

30.     Moreover, MTC failed to discover Isela's unauthorized absence for some time, and when it did discover her unauthorized absence, it failed to take appropriate action to bring her back to the campus in a timely manner. (*Id.* at ¶¶43-44.)

31.     After Isela returned to campus, MTC notified Mrs. Delaluz that it had allowed Isela to leave the campus unsupervised on the weekend of March 1, 2014. (*Id.* at ¶45.)

32.     During that conversation, Mrs. Delaluz again told MTC that she would not consent to Isela leaving the facility unsupervised given her young age and diabetes. (*Id.* at ¶46.)

33.     She then requested that MTC call her immediately if it ever learned that Isela had again left the Job Corps campus unsupervised. (*Id.*)

34.     MTC assured Mrs. Delaluz that it would properly supervise Isela going forward. (*Id.* at ¶47.)

35.     MTC should have removed Isela from the Job Corps program after she left the campus unsupervised—and it should have provided complete and accurate information to Mrs.

Delaluz regarding the situation so that she could have removed Isela from the program, but it failed to do so. (*Id.* at ¶¶25-29, 50-51.)

36.     MTC placed its own profits over Isela's safety when it failed to remove her from the Job Corps program (and failed to provide complete and accurate information to Mrs. Delaluz) because MTC has a financial incentive to ignore and cover up students' violations since MTC does not receive any funding related to a given student until she has been retained in the program for a period of time and because it does not receive ongoing funding related to a given student after she departs the program. (*Id.*)

37.     Rather than remove Isela from Clearfield Job Corps, Mrs. Delaluz relied on MTC's assurances that it would properly supervise Isela and continued to entrust Isela to MTC's care. (*Id.* at ¶¶47-52.)

38.     The next weekend, on March 8, 2014, MTC again failed to exercise proper oversight, and Isela left the Clearfield Job Corps campus unsupervised again. (*Id.* at ¶¶54-55.)

39.     MTC failed to discover her absence until the following day, March 9, 2014, when it received a phone call informing it that Isela was in Salt Lake City and had been without insulin since the day before. (*Id.* at ¶¶57-58.)

40.     MTC knew or should have known that Isela was in danger. (*Id.* at ¶59.)

41.     MTC failed to take reasonable steps to ensure that Isela received her insulin as quickly as possible. (*Id.* at ¶¶60-65.)

42.     MTC did not call Mrs. Delaluz, as she had requested to tell her that Isela had again left campus unsupervised. (*Id.* at ¶71.)

43.     Only after a significant delay did MTC finally send a staff member to Salt Lake City to pick Isela up and take her back to the Job Corps campus. (*Id.* at ¶62.)

44.     Even then, MTC did not send Isela's insulin with the driver. (*Id.* at ¶63.)

45.     Moreover, when Isela arrived back on the Job Corps campus, MTC again failed to ensure that she took her insulin. (*Id.* at ¶64.)

46.     By this time, Isela was suffering an insulin deficiency, which was causing diabetic ketoacidosis—potentially fatal levels of glucose and ketone in her blood. (*Id.* ¶¶65-66.)

47.     For several more hours, MTC still did not ensure that Isela received her insulin. (*Id.* ¶¶65-68.)

48.     Isela began suffering seizures in the presence of an MTC staff member. (*Id.* at ¶66.)

49.     Even then, however, MTC failed to call an ambulance or obtain emergency care for Isela. (*Id.* a ¶67.)

50.     Instead, MTC staff demanded that Isela walk to the Wellness Center. (*Id.* ¶68.)

51.     As she walked, Isela collapsed in cardiac arrest. (*Id.* at ¶69.)

52.     Finally, hours too late, MTC called for an ambulance. (*Id.* at ¶70.)

53.     Isela passed away shortly thereafter. (*Id.* at ¶77.)

**D. The FECA Determination**

54.     Plaintiff submitted a FECA claim for survivor's benefits as Isela was deemed an "employee" of the United States for FECA purposes. (*Doc. 6*-1, Exhibit 1 to Def.'s Mot. For Judgment on the Pleadings at MTC0003.)

55.     The Office of Workers' Compensation Programs denied plaintiff's claim because it determined that (1) the evidence "d[id] not substantiate that [Isela]'s passing was caused, precipitated or aggravated by her employment" and (2) Mrs. Delaluz was not "dependent on the decedent." (*Id.* at MTC0004-05.)

## **ARGUMENT**

The Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 et seq., established a federal workers compensation system. Through FECA, "Congress adopted the principal compromise—the 'quid pro quo'—commonly found in workers' compensation legislation: employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed Aircraft Corp. v. U.S.*, 460 U.S. 190, 194 (1983). FECA's exclusive liability provision, 5 U.S.C. § 8116(c), forms part of this compromise. It provides in relevant part:

> The liability of the United States or an instrumentality thereof under this subchapter or any extension thereof with respect to the injury or death of an employee is exclusive and instead of all other liability of the United States or the instrumentality to the employee, his legal representative, spouse, dependents, next of kin, and any other person otherwise entitled to recover damages from the United States or the instrumentality because of the injury or death in a direct judicial proceeding, in a civil action, or in admiralty, or by an administrative or judicial proceeding under a workmen's compensation statute or under a Federal tort liability statute.

*Id.* While FECA provides an exclusive remedy against the government, FECA also expressly provides for lawsuits arising from the same injuries against non-government third-parties by creating a subrogation right in favor of the United States:

> If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the United States to pay damages, and a beneficiary entitled to compensation from the United States for that injury or death receives money or other property in satisfaction of that liability as the result of suit or settlement by him or in his behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the United States the amount of compensation paid by the United States and credit any surplus on future payments of compensation payable to him for the same injury.

5 U.S.C. § 8132. Finally, the statute provides that grants or denials of payments under FECA are not subject to judicial review outside of the FECA claims system:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is--
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. §8128(b). Taken together, these three statutes provide that: (1) a federal employee's FECA determination is her exclusive remedy against "the United States or an instrumentality thereof," (2) a federal employee may also sue a third party (e.g., a party that is not "the United States or an instrumentality thereof") for the same injury, and (3) FECA grants and denials of payments cannot be judicially reviewed by other tribunals.

## A. Section 8128(b)—A Narrow Judicial Review Bar—Does Not Apply Here

Section 8128(b) bars courts outside the FECA claims system from judicially reviewing a reward or denial of FECA payments.[1] The plain language of § 8128(b) prohibits judicial review of "action[s] of the Secretary or his designee in allowing or denying … payment[s] under" FECA. Plaintiff does not seek judicial review of a reward or denial of FECA payments. Plaintiff does not seek to relitigate the FECA claims process. The relief plaintiff seeks through this case could not possibly overturn or disturb the FECA determination. Therefore, § 8128(b) simply does not apply here.

MTC urges the Court to transform § 8128(b) into a sweeping collateral estoppel provision that not only bars judicial review of grants or denials of FECA payments, but also bars all claims that are somehow related to such FECA determinations.

---

[1] The Supreme Court has acknowledged that § 8128(b) bars judicial review of such payments determinations. *See Lindahl v. Office of Personnel Management*, 470 U.S. 768, 779-780 & n.13 (1985) (citing § 8128(b) as an example of the language Congress typically employs when it "intends to bar judicial review altogether"); *see also Southwest Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991).

Federal courts have repeatedly rejected attempts to read § 8128(b) so broadly. Recently, the Federal Circuit ruled: "by its plain terms, § 8128(b) applies only to actions by the Secretary or his designee 'in allowing or denying a payment.' It does not close the door on review of all decisions that may overlap or touch on a DOL benefits determination." *Kerrigan v. Merit Systems Protection Board*, 833 F.3d 1349, 1353 (Fed. Cir. 2016). *Kerrigan* ruled that § 8128(b) only bars "simple appeal[s] of benefits denial[s]." *Id.* Thus, § 8128(b) does not prevent the litigation of matters involving "much of the same facts and evidence" considered in a FECA determination as long as the non-FECA proceeding addresses "separate legal questions." *Id.* *Kerrigan* overturned the Merit Systems Protection Board's conclusion that it lacked jurisdiction under § 8128(b) to consider a federal employee/whistleblower's claim that the Department of Labor had taken retaliatory action against him in an administrative proceeding under FECA. *Id.* *Kerrigan* concluded that whether an agency retaliated against a whistleblower in a FECA proceeding and whether FECA benefits had been properly denied were legally distinct questions despite the considerable factual overlap between the two. *Id.* Thus, § 8128(b) did not apply. *Id.*

*Kerrigan* is the most recent entry in a line of Federal Circuit cases holding that § 8128(b) only bars simple appeals of FECA awards or denials. *See, e.g., Green v. U.S. Postal Service*, 223 Fed.Appx. 994, 2007 WL 1426896 at *3 (Fed. Cir. 2007); *Minor v. Merit Systems Protection Bd.*, 819 F.2d 280, 283 (Fed.Cir. 1987). *Green* ruled that § 8128(b) only "preclude[s] review of the Secretary's allowance or denial of disability payments" and not other, factually related issues. 2007 WL 1426896 at *3. Similarly, *Minor* ruled that § 8128(b) "obviously relates only to the Labor Department's decisions on the making or denying of compensation awards." 819 F.2d at 283. *Minor* ruled that § 8128(b) did not bar a separate administrative process from concluding that an individual had fraudulently obtained FECA benefits. *Id. Minor* concluded that the

availability of different remedies, and not the significant factual overlap between the two processes, was decisive: "[e]ven though much the same facts and evidence may have been before the [arbitrator deciding whether the FECA beneficiary could be terminated,] and also before the [OWCP deciding whether benefits were warranted], it was the [arbitrator] that had power to decide [the employee's] fraudulent acts and to remove her on that ground." *Id.*

Similarly, the Second Circuit ruled that § 8128(b) only bars review in cases that "would necessarily entail a relitigation of OWCP's decision to pay benefits in the first instance." *U.S. v. Sforza*, 326 F.3d 107, 112 (2nd Cir. 2003); *see also Carter v. Potter*, 2007 WL 879417at *5 (E.D.N.Y. 2007) (following *Sforza*; ruling that "[§] 8128(b) creates a jurisdictional bar in cases that 'necessarily entail a relitigation of OWCP's decision' with respect to the payment of benefits"). *Sforza* ruled that § 8128(b) did not bar a False Claims Act claim alleging the defendants "conspired to submit false claims to OWCP to obtain FECA benefits." *Id.* at 111-15. *Sforza* ruled that even though the False Claims Act proceeding could result in the loss of FECA benefits, it was not barred by § 8128(b) because it did not require relitigation of the FECA claim:

> [t]he government's suit here seeks treble damages and civil penalties based on the Sforzas' actions in affirmatively defrauding OWCP. Such a suit is not based upon a presupposition that OWCP erred, since OWCP could have correctly awarded benefits based on the information that the Sforzas fraudulently submitted to it. Thus, the text of § 8128(b) does not by its own express terms preclude the government's suit under the FCA here.

*Id.* at 112-13. Similarly, *U.S. v. Carpentieri*, 23 F. Supp. 2d 433 (S.D.N.Y. 1998), rejected the argument that § 8128(b) bars "review of all issues *related* to the Secretary of Labor's award or denial of FECA benefits." *Id.* at 438 (emphasis original). Like *Sforza*, *Carpentieri* ruled § 8128(b) did not bar a False Claims Act claim that sought to undermine a FECA benefits award. *Id.* at 435. *Carpentieri* ruled the § 8128(b) bar did not apply because it involved a different inquiry (different elements, different remedies) than the FECA claim:

> The Government's claims demand an examination of whether or not Mr. Carpentieri supplied information he knew to be false to the federal government. The OWCP's inquiry involved the question of whether the Defendant qualified for benefits under the terms of FECA. While a finding that Mr. Carpentieri did in fact falsify documents to obtain FECA benefits would be philosophically incompatible with the ongoing payment of benefits to Mr. Carpentieri, it nevertheless would not constitute a judicial review of the OWCP determination.

*Id.* at 435-36. In short, the defendant's extremely broad reading under which § 8128(b) would

"bar judicial review not only of a determination as to eligibility for benefits, but also of any

issues that touch upon such a determination" was soundly rejected. *Id.* at 438.

Similarly, the Third Circuit ruled that the Office of Workers' Compensation Programs'[2]

factual conclusions underlying a FECA determination were not entitled to issue preclusive effect.

*NALC, AFL-CIO v. U.S. Postal Serv.*, 272 F.3d 182, 188-89 (3rd Cir. 2001). Specifically, *NALC*

ruled that an arbitrator of an employee's wrongful termination claim was not bound by OWCP's

factual findings in granting an employee FECA benefits. *Id*. Notably, *NALC* concluded Congress

did not intend for factual findings issued in FECA's "non-adversarial proceeding[s]" to have

preclusive effect in separate adversarial proceedings. *Id*. at 189.

The reasoning of *Kerrigan, Green, Minor, Sforza, Carpentieri, and NALC* applies here.

Section 8128(b) only bars claims that necessarily require the relitigation of a FECA grant or

denial of payments. However, § 8128(b) does not bar all claims that are somehow factually

related to a FECA determination. Plaintiff's claims against MTC, the third-party contractor that

caused Isela's wrongful death, do not require relitigation of the FECA determination. Thus, §

8128(b) poses no impediment here.

---

[2] The Office of Workers' Compensation Programs or "OWCP" is the Department of Labor division that administers FECA.

## B.  MTC Was Not Isela's Employer

The FECA determination states the claim "d[id] not substantiate that [Isela]'s passing was caused, precipitated or aggravated by her employment." What does this have to do with MTC? Trying to bridge that gap, MTC asks the Court to assume that it was Isela's employer. However, the United States—and not MTC—was Isela's employer for FECA purposes.

Job Corps students are deemed employees of the United States for FECA purposes. *See* 5 U.S.C. § 8143(a) ("Subject to the provisions of this subsection, this subchapter applies to an enrollee in the Job Corps"); 29 U.S.C. § 2897 ("Except as otherwise provided in this subsection and in section 8143 (a) of title 5, enrollees shall not be considered to be Federal employees …"); 20 CFR 670.910(a) ("Job Corps students are considered Federal employees for purposes of the Federal Employees' Compensation Act (FECA) as specified in 29 U.S.C. 2897."). Therefore, it follows that Isela was an employee of the United States for FECA purposes and MTC's claim that it was Isela's employer is incorrect as a matter of law.

MTC's claim that it was Isela's employer also has no factual basis. At this stage, the Court must accept as true plaintiff's allegation that "MTC was not an employer of Isela." (*Doc. 2-3*, Second Amended Complaint at ¶9.) Moreover, MTC has failed to make a showing that it was Isela's employer. MTC has failed to demonstrate that it hired Isela. MTC has failed to identify Isela's job title, job duties, or job description as an MTC employee. MTC has failed to demonstrate that Isela performed labor for MTC's benefit in exchange for remuneration that was paid by MTC itself. MTC claims on its website that it employs "over 8,000 people." Yet MTC has failed to demonstrate that it treats Job Corps students the same way it treats its 8,000 actual employees (e.g., that she was on MTC's payroll, received a W-2 from MTC, and so forth).

MTC was obligated to provide various services to Isela, including housing, counseling, food, medical care, recreation, and transportation. *See* 20 C.F.R. §§ 670.525(a), 670.525(d), 670.600. As a Job Corps student, Isela was entitled to receive these services without performing any labor for MTC's benefit. Of course, these are merely the services the Department of Labor pays MTC to provide under its contract. Yet MTC suggests the provision of these services proves the existence of an employment relationship between MTC and Job Corps students. The relationship between MTC and Isela is nothing like a legally cognizable employer-employee relationship: Isela was entitled to receive an extensive array of services and benefits, yet she had no obligation to perform labor for MTC's benefit.

MTC is a non-governmental corporation merely performing under a government contract for money. The United States—and not MTC—was Isela's "employer" under FECA. Accordingly, the determination that the FECA claim "d[id] not substantiate that [Isela]'s passing was caused, precipitated or aggravated by her employment" simply has no bearing on MTC's liability as a third-party tortfeasor.

## C. FECA Affords No Protection to Private, Third-Party Tortfeasors Like MTC

### 1. FECA Expressly Provides for Claims Against Third-Party Tortfeasors Like MTC

FECA expressly acknowledges plaintiffs have a right to pursue both FECA claims and claims against third-parties arising from the same injuries. In particular, § 8132 provides that, when a plaintiff recovers on both a FECA claim and a third-party claim arising from the same injury, the United States has a right of subrogation. The Supreme Court has acknowledged plaintiffs' right to pursue both a FECA claim and a claim against a third-party contractor like MTC. *See, e.g., Lockheed Aircraft Corp. v. U.S.*, 460 U.S. at 197 ("Here … a third party has been forced to pay tort damages for the death or injury of a federal employee covered by

FECA"). Indeed, addressing a challenge to yet another third-party claim, the Supreme Court

ruled that in enacting FECA,

> the concern of Congress was to provide federal employees a swift, economical, and assured right of compensation for injuries arising out of the employment relationship, regardless of the negligence of the employee or his fellow servants, or the lack of fault on the part of the United States. The purpose of [the exclusive remedy provision] was to establish that, as between the Government on the one hand and its employees and their representatives or dependents on the other, the statutory remedy was to be exclusive. There is no evidence whatever that Congress was concerned with the rights of unrelated third parties.

*Weyerhaeuser S.S. Co. v. United States*, 372 U.S. 597, 601 (1963). Thus, *Schrader v. Hercules,*

*Inc.*, 489 F.Supp. 159, 161 (W.D. Va. 1980), rejected a defendant's attempt to "preclude third-

party suits against contractors operating under cost reimbursement contracts." *Schrader* ruled:

"Nothing under the Act precludes recovery against a third party. In fact, the Act expressly

recognizes third-party liability. That express recognition cannot be ignored by the courts." *Id.* at

12 (footnote and internal citations omitted).

MTC's contention that it is immune from liability due to denial of the FECA claim

directly conflicts with the long-established right of a plaintiff to pursue both a FECA claim and a

third-party claim against a private contractor like MTC. The FECA determination exclusively

resolved the FECA claim; it is silent regarding plaintiff's claims against MTC.

### 2. MTC Is Not "The United States or an Instrumentality Thereof"

As discussed, the compromise embedded in FECA affords certain protections to the

United States and its instrumentalities. *See, e.g.,* 5 U.S.C. §§ 8116(c), 8128(b), and 8132. The

question, therefore, is whether MTC qualifies as "the United States or an instrumentality thereof"

that is protected by those provisions. In *Mount Olivet Cemetery Ass'n v. Salt Lake City,* 164 F.3d

480, 486 (10th Cir.1998), the Tenth Circuit summarized factors courts consider to determine

whether an entity is a federal instrumentality:

There is no bright line rule or specific test to determine if an entity is a federal instrumentality. *See T I Federal Credit Union v. DelBonis*, 72 F.3d 921, 931 (1st Cir.1995). Courts therefore have looked to a variety of factors to make this determination. *Id.*; *see Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 397–98, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (whether government officers handle and control its operations; whether officers of entity are appointed by government); *United States v. Boyd*, 378 U.S. 39, 45, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964) (whether entity is organized for profit and using property "in connection with its own commercial activities"); *United States v. Township of Muskegon*, 355 U.S. 484, 486, 78 S.Ct. 483, 2 L.Ed.2d 436 (1958) (whether governmental control over entity is such that it "could properly be called a 'servant' of the United States in agency terms"); *Cherry Cotton Mills, Inc. v. United States*, 327 U.S. 536, 539, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835 (1946) (whether entity is supported by governmental aid; whether entity's profits are distributed to and its losses borne by government); *Clallam County, Wash. v. United States*, 263 U.S. 341, 343, 44 S.Ct. 121, 68 L.Ed. 328 (1923) (whether entity is owned by government); *United States v. Michigan*, 851 F.2d 803, 806 (6th Cir.1988) (whether entity performed important governmental function).

*Id.* at 486. Moreover, FECA provides that agencies and instrumentalities must be sent annual statements regarding "the total cost of benefits and other payments made from the Employees' Compensation Fund" and must appropriate or otherwise deposit funds for the payment of FECA claims. *See* 5 U.S.C. § 8147(b).

There is no allegation in the pleadings (let alone evidence) to support a conclusion that MTC is an agency or instrumentality of the United States. At this stage, the Court must accept as true plaintiff's allegations that: (1) MTC is not an agency of the United States, and (2) MTC is not an instrumentality of the United States. (*Doc. 2-3*, Second Amended Complaint at ¶¶1-3.) On the contrary, MTC is a private, for-profit company. (*Id.* at ¶¶1-2.) MTC is a party to contracts with various agencies of the United States. (*Id.*) MTC operates the Clearfield Job Corps Center and other Job Corps Centers pursuant to contracts with the United States Department of Labor. (*Id.*) MTC in not owned by the United States. (*Id.*)

To the extent MTC seeks to demonstrate it is an instrumentality of the United States, it has failed to make a showing related to the *Mount Olivet* factors listed above. MTC does not

claim that it receives notices from the Federal Employees Compensation Fund pursuant to 5 U.S.C. §8147. MTC does not claim that government officers handle or control its operations. MTC does not claim that its officers are appointed by the government. MTC does not claim that it does not use the facilities of the Clearfield Job Corps Center in connection with its own commercial activities. MTC does not claim that the government exercises such control over MTC that MTC could properly be called a servant of the United States for agency law purposes. MTC does not claim that it is supported by government aid. MTC does not claim that its profits are distributed to and/or that its losses are borne by the government. MTC does not claim that it performs or has performed an important government function.

*Davis v. Management & Training Corp. Centers*, 2000 WL 1701773 (D. Kan. 2000), expressly rejected MTC's claim that it is an instrumentality of the United States. *Davis* rejected the contention that MTC performs an important government function. *Davis* ruled: "[T]he court is not persuaded that MTC is performing an important governmental function. … MTC is simply administering a program for the United States Department of Labor, a program which, although valuable to the public, is neither significantly important nor a traditional governmental power." *Id.* at *5. Likewise, *Davis* rejected the contention that MTC was an "instrumentality" because its day-to-day activities were allegedly controlled by the government. *Davis* ruled: "The court is not persuaded at this point that the federal government controls the day-to-day operations of Flint Hills Job Corps Center. … The fact of broad, supervisory control or even the potential to exercise even detailed control, cannot convert a contractor into an agent." *Id.* at *6. Finally, addressing some of the other "instrumentality" factors, *Davis* ruled: "MTC is a for-profit corporation incorporated under the laws of Delaware. Government officials do not control its operations or appoint or select its employees. The government does not receive the profits of

MTC or share its losses." *Id*. Thus, *Davis* concluded, "[t]he factors noted in the other cases concerning the determination of a federal instrumentality also suggest that MTC is not a federal instrumentality." *Id.*

Other federal courts have likewise concluded that operators of Job Corps Centers are not instrumentalities of the United States. *See Daniels v. Chugach Government Services, Inc*., 149 F.Supp.3d 183 (2016) (ruling that the operator of the Potomac Job Corps Center was not an instrumentality of the United States; concluding "[defendant] has cited to no authority, and the Court is aware of none, that has deemed a private government contractor as an instrumentality of the federal government"); *Howren v. Career Systems Development Corp*., 2006 WL 2949750 at *2 (W.D.Ky 2006) (rejecting contention that the operator of a Job Corps Center was an instrumentality of the United States; concluding "[the operator] is not a corporate instrumentality created by Congress. It is simply a corporation under contract with the government."); *Schrader*, 489 F.Supp. at 161-62 (rejecting contractor's claim that it should be protected by FECA's exclusive remedy provision; ruling that "[n]othing under the Act precludes recovery against a third party," "the Act expressly recognizes third-party liability," and "[t]hat express recognition cannot be ignored by the courts.")

Because MTC is not "the United States or an instrumentality thereof," it is not entitled to protection under 5 U.S.C. §§ 8116(c), 8128(b), and 8132.

### 3. MTC Is Not Entitled to FECA Protections Because It Does Not Contribute to FECA

As discussed, FECA represents a compromise under which "employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government." *Lockheed*, 460 U.S. at 194. MTC contributes nothing to the FECA system. In contrast, agencies and instrumentalities whose

employees are actually protected by FECA must appropriate or otherwise deposit funds for the purpose of paying FECA claims. *See* 5 U.S.C. § 8147(b).

Thus, MTC asserts it is entitled to enjoy the benefits the FECA system affords to employers without bearing the associated burdens. This is improper. FECA protects the agencies and instrumentalities that participate in it. FECA affords no protection to private, third-party contractors like MTC. *See Weyerhaeuser*, 372 U.S. at 601 (ruling that FECA concerns the rights of "the Government on the one hand and its employees and their representatives or dependents on the other" and "[t]here is no evidence whatever that Congress was concerned with the rights of unrelated third parties.")

## D. The FECA Determination Has No Preclusive Effect

MTC urges the Court to give the FECA determination collateral estoppel effect. As discussed, 5 U.S.C. § 8128(b) is not a collateral estoppel provision, but a narrow bar prohibiting judicial review of grants or denials of payments under FECA. Moreover, even if § 8128(b) were a collateral estoppel provision, MTC must still satisfy the elements of collateral estoppel. MTC in unable to do so because: (1) plaintiff had no incentive to fully litigate the FECA claim, (2) the FECA determination is not the product of an adversarial, judicial process, and (3) the issues in the FECA claim and the issues in this case are not identical.

## 1. The FECA Determination Has No Collateral Estoppel Effect Because Plaintiff Had No Incentive to Fully Litigate the FECA Claim

The Supreme Court has ruled that administrative determinations may be given collateral estoppel effect. *See, e.g., Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104, 107-08 (1991); *B&B Hardware v. Hargis*, 135 S.Ct. 1293, 1302-03 (2015). However, the Supreme Court has also ruled that key limits apply. The Supreme Court has ruled that the administrative agency that issued the underlying decision must have been "acting in a judicial capacity" and must have

resolved "disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate" *Astoria*, 501 U.S. at 107; *B&B Hardware,* 135 S.Ct. at 1303.

      In particular, *B&B Hardware* ruled that the Supreme Court relies on the Restatement (Second) of Judgments §§27-28 to determine when collateral estoppel applies to an administrative determination:

> Although the idea of issue preclusion is straightforward, it can be challenging to implement. The Court, therefore, regularly turns to the Restatement (Second) of Judgments for a statement of the ordinary elements of issue preclusion. … The Restatement explains that subject to certain well-known exceptions, the general rule is that "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27, p. 250 (1980); *see also id*., § 28, at 273 (listing exceptions such as whether appellate review was available or whether there were "differences in the quality or extensiveness of the procedures followed").

*B&B Hardware,* 135 S.Ct. at 1303 (internal citations omitted). Section 28 of the Restatement (Second) of Judgments provides:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
>                        \* \* \*
>
> (5) There is a clear and convincing need for a new determination of the issue …
> (c) because the party sought to be precluded … did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action.

For example, the comment on §28(5)(c) explains, "the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair." *Id.* at comment j. The FECA determination has no issue preclusive effect here because plaintiff had no incentive to fully litigate the claim.

      In this case, for plaintiff to have been awarded survivor's benefits under FECA, not only would she have had to prove that Isela's death was caused by her employment, she would have

also had to prove that she was "dependent on" Isela. 20 C.F.R. § 10.410. Because plaintiff did

not rely on Isela's income for support, plaintiff knew that it would be very difficult to prove her

dependence, even her partial dependence, on Isela. Thus, plaintiff recognized from the outset that

her FECA claim would likely be denied on that basis alone. Accordingly, plaintiff had no

incentive to fully litigate the FECA claim. Doing so would have required the expenditure of

substantial expert witness fees in an effort that was likely to be fruitless in any event. The FECA

determination confirmed plaintiff's assessment of this situation was correct:

> With regards to compensation entitlements, parents are entitled to compensation if
> the evidence establishes that the parents were dependent on the decedent;
> however, our Office finds that you are not entitled to compensation benefits
> because you stated on the form CA-5b that you did not rely on the decedent's
> income for support nor did the decedent pay you any support.

(*Doc. 6-1*, Exhibit 1 to Def.'s Mot. For Judgment on the Pleadings at MTC0005.)  In light of this

situation, plaintiff had nothing to gain from full litigation of the FECA claim. Thus, "the amount

in controversy in the first action [was] so small in relation to the amount in controversy in the

second that preclusion would be plainly unfair." *See* § 28, comment j. Accordingly, the Court

should rule that the FECA determination has no issue preclusive effect.

**2. The FECA Determination Has No Collateral Estoppel Effect Because the Agency Did Not Act in a Judicial Capacity**

As discussed, the Supreme Court has ruled that an administrative determination may only

be given collateral estoppel effect if the administrative was "acting in a judicial capacity."

*Astoria*, 501 U.S. at 107; *B&B Hardware,* 135 S.Ct. at 1303 (same). FECA determinations are

not the product of an adversarial, judicial dispute resolution process. *See* 20 CFR §10.0

("Proceedings under the FECA are non-adversarial in nature"). Thus, the Third Circuit refused to

give the factual findings underlying a FECA determination collateral estoppel effect. *NALC*, 272

F.3d at 189. The Third Circuit explained:

> We are convinced that it would be strange if a determination in a non-adversarial proceeding had a preclusive effect in an adversarial proceeding as "the general rule [is] that issue preclusion attaches only '[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment....' " *Arizona v. California,* 530 U.S. 392, 414, 120 S.Ct. 2304, 2319, 147 L.Ed.2d 374 (2000). While we do not suggest that Congress could not make a ruling under section 8128(b) preclusive in the circumstances here, we hold that it did not do so."

*Id*. Likewise, in an analogous case concerning the Utah Worker's Compensation Act, the Utah

Supreme Court explained:

> [I]f workers' compensation adjudications were given preclusive effect in suits against nonemployer third parties, injured workers would face a vexing dilemma: either elect the more simple and immediate relief afforded by workers' compensation or the more complex but potentially more lucrative civil litigation process. The Utah Workers' Compensation Act does not require an employee to make such an election of remedies.
>
> * * *
>
> We decline to read [the Utah workers' compensation act] as permitting an employee to engage third parties in the rigor of litigation while containing an implied threat that rulings made by an administrative law judge in a workers' compensation adjudication may, through the invocation of collateral estoppel, derail the employee's lawsuit. To compel an election of this nature would subvert the general purpose behind workers' compensation, which is "to provide compensation to injured employees 'by a simple and speedy procedure which eliminates the expense, delay and uncertainty' in proving fault." Employees must not be forced to confront such a risk.

*Gudmundson v. Del Ozone*, 2010 UT 33, ¶¶ 27-38, 232 P.3d 1059. The same reasoning applies

here: giving causation determinations made in a non-adversarial, non-judicial process preclusive

effect in lawsuits against private third-party contractors would undermine FECA and unfairly

prejudice employees' well-established right to pursue claims against third-parties like MTC.

**3. The FECA Determination Has No Preclusive Effect Because the Issues Are Not Identical**

It is well established that a party asserting issue preclusion must demonstrate that "the

issue previously decided is identical with the one presented in the action in question." *Dodge v.

Cotter,* 203 F.3d 1190, 1198 (10th Cir.2000). The burden of proving the identity of issues rests

on the party asserting the collateral estoppel. *Hernandez v. Los Angeles,* 624 F.2d 935, 937 (9th Cir.1980).

The FECA determination has no collateral estoppel here effect because the issues are far from identical. The FECA determination merely states the claim "d[id] not substantiate that [Isela]'s passing was caused, precipitated or aggravated by her employment." Notably absent from the FECA determination is any reference to anything relevant to plaintiff's claims against MTC. For example, the FECA determination says nothing about: (1) the duties MTC owed, (2) MTC's breaches of those duties, (3) plaintiff's damages, and (4) how MTC's breaches caused plaintiff's damages. This makes sense, of course: the FECA determination addressed claims arising from Isela's employment by the United States; it simply did not consider or decide any issues related to the possible liability of non-governmental third-parties like MTC.

MTC invites the Court to leap across a gaping logical gulf. A finding that plaintiff's FECA claim "d[id] not substantiate that [Isela]'s passing was caused, precipitated or aggravated by her employment" by the United States sheds no light on the claim that MTC, a private third-party contractor, negligently caused Isela's death. These are entirely separate claims involving different parties who had different relationships with Isela, and who owed different duties to her. As demonstrated above, MTC was not Isela's employer—and a determination about Isela's employment by the United States says nothing about MTC's liability. Moreover, Isela does not seek review of a grant or denial of payments under FECA. On the contrary, she pursues an entirely different claim against a different party with different elements and different remedies as FECA expressly acknowledges she has a right to do.

## **CONCLUSION**

The court should deny MTC's Motion for Judgment on the Pleadings because:

- Section 8128(b) only prohibits relitigation of awards and denials of FECA benefits. MTC fails to demonstrate this case will necessarily require the relitigation of the FECA claims process. Thus, § 8128(b) does not apply.

- For FECA purposes, Isela was an employee of the United States. MTC's claim that it was Isela's employer is both incorrect as a matter of law and factually unsupported. Thus, MTC has failed to demonstrate that the FECA determination that decedent's death was not related to her "employment" says anything about MTC's liability.

- FECA expressly provides for litigation of claims against private, third-party contractors. MTC fails to explain why that provision does not control here.

- The FECA provisions in question only protect "the United States and instrumentalities thereof." MTC makes no attempt to show it qualifies as either "the United States" or "an instrumentality thereof." Moreover, MTC fails to explain why FECA provisions should be dramatically expanded to protect a private, third-party contractor that contributes nothing to the FECA system.

- The FECA determination has no collateral estoppel effect because: (1) plaintiff had no incentive to fully litigate the FECA claim, (2) the FECA determination is not the product of an adversarial, judicial process, and (3) the issues in the two matters are not identical.

As demonstrated, MTC was not Isela's employer, the United States, or an instrumentality thereof. MTC was merely a private, third-party contractor that caused Isela's death and is subject to liability for the same through this case.

DATED this 7th day of March, 2017.

PECK HADFIELD BAXTER & MOORE, LLC


*/s/ Shawn P. Bailey*
Shawn P. Bailey
*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of March 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Alan C. Bradshaw
John (Jack) T. Nelson
Mitch M. Longson
MANNING CURTIS BRADSHAW & BEDNAR PLLC
136 East South Temple, Suite 1300
Salt Lake City, UT 84111-1135
abradshaw@mc2b.com
jnelson@mc2b.com
mlongson@mc2b.com


PECK HADFIELD BAXTER & MOORE, LLC

*/s/ Shawn P. Bailey*
Shawn P. Bailey
*Attorneys for Plaintiff*